WALTER G. BURNS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Burns v. Commissioner
Docket No. 34275-87
United States Tax Court
T.C. Memo 1991-169; 1991 Tax Ct. Memo LEXIS 190; 61 T.C.M. (CCH) 2408; T.C.M. (RIA) 91169; April 15, 1991, Filed *190 Decision will be entered under Rule 155. John Gigounas and Edward B. Simpson, Jr., for the petitioner. Daniel J. Parent, for the respondent. COHEN, Judge. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency of $ 39,599.29 in petitioner's Federal income tax for 1983 and additions to tax of $ 1,980 under section 6653(a)(1) and $ 9,900 under section 6661. Respondent also determined that an amount equal to 50 percent of the interest on the full amount of the deficiency was due under section 6653(a)(2). Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the year in issue. Prior to trial, the parties resolved all issues other than a casualty loss claimed by petitioner and the additions to tax attributable to that casualty loss. In their post-trial briefs, petitioner conceded the casualty loss and respondent conceded the addition to tax under section 6661 attributable to the casualty loss claim. The sole issue for decision is whether petitioner is liable for the additions to tax for negligence. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts *191 are incorporated in our findings by this reference. Petitioner resided in Concord, California, at the time his petition was filed. During 1983, petitioner was employed as a corporate executive. On December 1, 1981, petitioner (lessee-buyer) and Boyd T. Wiltsey (Wiltsey) (lessor-seller) entered into a Residential Lease With Option to Purchase property located on Woodview Drive, Lafayette, California. The lease provided for rent at the rate of $ 1,600 per month and "option monies (non-refundable)" of $ 2,000 at the commencement of the lease. The option clause provided in part: 4. Buyer shall be credited the total payment of $ 1,600 per month toward purchase price, for the first year, if option is exercised prior to November 30, 1982. 5. Buyer to pay an additional $ 2,000.00 option monies to extend for 2nd year and all monthly ($ 1,600.) payments shall be divided (1/2 toward purchase; 1/2 as rent) including all payments made during year one. 6. Buyer to pay an additional $ 2,000.00 option monies to extend for 3rd year, with monthly payment to be credited as in #5 above.
Petitioner took possession of the property and used it as his personal residence. On *192 or about November 30, 1982, petitioner and Wiltsey entered into a Real Estate Purchase Contract. That contract was contingent, among other things, upon petitioner's obtaining and approving in writing an inspection of the property as to soil and structural condition. Petitioner thereafter received a soil engineering report dated January 13, 1983. The Real Estate Purchase Contract was also contingent upon petitioner's applying for and receiving an 80 percent loan with American Wrap Mortgage at an interest rate not to exceed 11-5/8 percent annually, fixed for 30 years. Petitioner applied for such a loan but canceled the application on or about January 19, 1983. On or about January 19, 1983, petitioner hired Richard M. Gonzales, an attorney, to represent him in relation to a dispute with Wiltsey. During the latter part of March 1983, the Lafayette, California, area received a substantial amount of rainfall. A landslide occurred on the Woodview Drive property between March 23 and March 28, 1983. As reflected in correspondence in April 1983 between petitioner's attorney and Wiltsey's attorney, the dispute between petitioner and Wiltsey involved Wiltsey's claim of delinquent rent, *193 modifications made by petitioner to the residence, and certain furnishings in the residence. Petitioner's position, as stated in his attorney's letter dated April 25, 1983, was that: As far as the money which is claimed, it is our contention that no sums are due and owing from Mr. Burns to Mr. Wiltsey. Mr. Burns decided not to go through with the sale of the house for several reasons: (1) your client breached pertinent terms of the Sales Agreement, (2) the property on which the residence sits has become highly unstable, and (3) the structural integrity of the residence is such that my client has been advised it is unsafe.
On his 1983 income tax return, petitioner claimed a casualty loss in the amount of $ 23,290.35. Included in the amount claimed as a casualty loss was $ 19,200 in rent, $ 6,000 for the option, $ 1,500 as a security deposit, various fees relating to the purchase escrow, duplication of certain claimed expenses, and legal fees. Petitioner's 1983 income tax return was prepared by Orville Jones (Jones), who died prior to trial of this action in October 1990. Petitioner provided Jones with a list of the items claimed as a casualty loss on the return. ULTIMATE *194 FINDINGS OF FACT Petitioner did not sustain a casualty loss in 1983. Petitioner did not rely on professional advice and did not reasonably believe that he was entitled to a casualty loss in the amount claimed. OPINION Section 6653(a)(1) provides for an addition to tax equal to 5 percent of the underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) provides for a further addition to tax equal to 50 percent of the interest due on the underpayment attributable to negligence. For the purpose of section 6653(a), negligence is the lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner has the burden of proving that he was not negligent. Rule 142(a), Tax Court Rules of Practice and Procedure. He has failed to satisfy that burden. Petitioner claims that he relied on his return preparer and on "an attorney" in claiming the casualty loss on his 1983 return. The substance of his testimony at trial concerning the alleged reliance is as follows: Q Mr. *195 Burns, who advised you to claim the casualty loss deduction on your 1983 return? A Orville [Jones] and an attorney. Q Do you remember the attorney? A We had two, Gonzagos -- Gonzales maybe. I'm -- Q Gonzales? A Gonzales would be my first thought. We did have two. Q Mr. Burns, who determined the amount of the deduction you claimed for your casualty loss in 1983? A Who determined that? Q Yeah, how much you should claim for the deduction. A Orville's office I would guess.
This testimony is vague, incomplete, and inadequate to persuade us that petitioner was not negligent in deducting the exaggerated and unsupportable casualty loss claimed on his 1983 tax return. If the reason for the now conceded deduction were failure to satisfy a legal requirement as to the taxpayer's interest in the property damaged, petitioner's claimed reliance on professionals might be more credible. Here, however, petitioner knew that the amounts that he claimed included rents for the period of his occupancy prior to the purported exercise of his option. He thus had received value for those payments whether or not the option was exercised. The evidence also suggests that his decision to vacate *196 the premises and lose whatever amounts he had spent in relation to the option had been made prior to the rain damage to the property. Petitioner's failure to provide any specific account of conversations that he had with the professionals on whom he allegedly relied, his failure to recall with certainty the name of one of them, and his "guess" as to how the amounts to be claimed were derived lead us to reject his testimony. The claimed deduction was too good to be believed. We are not persuaded that petitioner relied on any professional or that any reliance was in good faith. To give effect to the stipulation of settled issues, Decision will be entered under Rule 155.